## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | **Case No. 04-20089-01-KHV** |
| | ) | |
| MONTGOMERY CARL AKERS, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

This case comes before the Court on defendant's <u>Motion To Withdraw Jacquelyn E. Rokusek As Attorney</u> (Doc. #197) filed October 6, 2006 and the <u>Combined Motion To Renew Motion To Dismiss Court Appointed Counsel And To Proceed In Pro Se; And Motion To Declare The Plea Agreement Invalid</u> (Doc. #189) which defendant filed pro se on August 15, 2006. On many occasions, the Court has instructed defendant that while he is represented by court-appointed counsel, it will not entertain his pro se motions. Consistent with that admonition, that part of defendant's pro se motion which seeks to rescind the plea agreement is stricken. The Court further holds as follows:

**1.     Defendant's renewed request to dismiss court-appointed counsel and proceed pro se.**

A criminal defendant has a constitutional and a statutory right to waive his right to counsel and represent himself at trial. <u>See</u> <u>Faretta v. California</u>, 422 U.S. 806, 807 (1975) (Sixth Amendment right to counsel necessarily implies right to proceed pro se); <u>see also</u> 28 U.S.C. § 1654 (codifying right of defendants in federal prosecutions to self-representation). The right of self-representation extends to a criminal defendant in the sentencing phase of a trial. <u>See</u> <u>United States v. Silkwood</u>, 893

F.2d 245, 247-49 (10th Cir. 1989).  The right to self-representation, however, is not absolute.  See United States v. Allen, 895 F.2d 1577, 1578 (10th Cir. 1990) (right to make knowing and intelligent waiver of right to counsel does not grant defendant license to play cat and mouse game with court).  When faced with a situation of potential abuse, the district court may properly impose restraints on the right to reject counsel to prevent the right from being manipulated so as to obstruct the orderly procedure of the courts.  United States v. Padilla, 819 F.2d 952, 959 (10th Cir. 1987).

To invoke the right of self-representation, defendant must satisfy four requirements.  First, defendant must clearly and unequivocally assert his intention to represent himself.  United States v. Mackovich, 209 F.3d, 1236 (10th Cir. 2000) (quoting United States v. Floyd, 81 F.3d 1517, 1527 (10th Cir. 1996)).  Second, defendant must knowingly and intelligently relinquish the benefits of representation by counsel.  Id.  Third, defendant must make this assertion in a timely fashion.  Id. (motion for self-representation timely if made before trial).  Fourth, the request cannot be made for purposes of delay.  See United States v. Akers, 215 F.3d 1089, 1097 (10th Cir. 2000); see also Hamilton v. Groose, 28 F.3d 859, 862 (8th Cir. 1994) (defendant may not manipulate right of self-representation in order to delay or disrupt proceedings).  The right to self-representation is unqualified only if demanded before trial.  See United States v. Beers, 189 F.3d 1297, 1303 (10th Cir. 1999).  Thus, in United States v. Estrada, 25 Fed. Appx. 814 (10th Cir. 2002), the Tenth Circuit held that a request for self-representation was for the purpose of delay where it was made after the end of the guilt phase of trial.  In ambiguous situations created by a defendant's vacillation or manipulation, the Court must ascribe a "constitutional primacy" to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation.  Mackovich, 209 F.3d at 1237 (quoting United States

-2-

v. Frazier-El, 204 F.3d 553, 559 (4th Cir. 2000)).

The Court finds that defendant's request to represent himself in this case is interposed for delay and that the Court has an independent duty to finally bring this case to a long overdue resolution.  See Akers, 215 F.3d at 1097.  Defendant initially appeared before the magistrate on August 4, 2004, and he entered his plea of guilty on September 21, 2005.  Between those two dates, defendant successfully delayed the proceedings by repeatedly seeking (and receiving) new counsel, demanding to proceed pro se and filing multiple pretrial motions.  Defendant has now been represented by four attorneys, as follows:

A.    Michael Harris, Esq.

On August 20, 2004, Magistrate Judge James P. O'Hara appointed Michael Harris, Federal Public Defender, as standby counsel.  See Doc. #9.  On October 6, 2004, defendant filed a motion stating that he no longer wished to represent himself, and requested that Michael Harris represent him.  See Doc. #20.  On October 15, 2004, Judge O'Hara appointed Mr. Harris as full counsel.  See Docs. ## 24-27.  On November 22, 2004, defendant asked the Court to appoint new counsel.  See Doc. #31.

B.    Scott Gyllenborg, Esq.

On November 29, 2004, the Court appointed Scott Gyllenborg to represent defendant.  See Doc. #33.  On December 22, 2004, defendant filed a motion requesting the Court to "intervene and manage the malfeasance" of defense counsel.  See Doc. #35.  At a hearing on January 24, 2005, defendant withdrew his motion for the Court to intervene.  See Doc. ## 37, 38.  On February 1, 2005, however, defendant filed a motion to dismiss Mr. Gyllenborg and proceed *pro se.*  See Doc. #39. The next day, February 2, 2005, defendant withdrew the motion requesting that the Court dismiss

Mr. Gyllenborg.  See Doc. #40.  Two days later, on February 4, 2005, defendant filed another motion to remove Mr. Gyllenborg as counsel.  See Doc. #41.  On February 9, 2005, defendant filed another motion to remove Mr. Gyllenborg as counsel.  See Doc. #51.

On March 7, 2005, the Court held a hearing and sustained the motions to remove Mr. Gyllenborg as counsel.  See Docs. ##57-58.  The Court advised defendant that he had a constitutional right to self-representation and advised him of the serious hazards of proceeding pro se.  The Court ascertained through a series of questions that defendant has no formal training in law and that his representation of himself at sentencing in the United States District Court in Colorado did "not work out well."  Defendant then asked the Court questions about sentencing, Blakey v. Washington, 542 U.S. 296 (2004), and procedural matters.  The Court stated that it could not advise him on trial strategy or evidence and procedure.  The Court informed defendant that at trial he must follow the Federal Rules of Evidence and Criminal Procedure.  The Court stated that proceeding pro se was "a very poor decision on your part," and that he would be better off with a lawyer.  The Court strongly urged defendant not to proceed pro se.  Defendant responded that he would love to have a lawyer but that his current lawyer would not take his calls or file any motions.  The Court noted that just because no motions had been filed did not mean that the attorney had done nothing.  The Court agreed, however, to appoint stand-by counsel.

C.      Forest Lowry, Esq.

On March 9, 2005, the Court appointed Forrest Lowry as standby counsel.  See Doc. #59. On April 7, 2005, at defendant's arraignment on a superceding indictment, Judge O'Hara appointed Mr. Lowery as full counsel with defendant's agreement.  See Docs. ## 78, 80.  On May 10, 2005, defendant filed a motion to remove Mr. Lowry as counsel.  See Doc. #95.  On May 17, 2005,

defendant withdrew his motion to remove Mr. Lowry.  See Doc. #98.  On July 18, 2005, defendant

filed a motion to disqualify Mr. Lowry as counsel and to proceed pro se.  See Doc. #105.  On August

25, 2005, the Court heard arguments on defendant's motion to disqualify counsel and granted Mr.

Lowry's oral motion to withdraw.  The Court again informed defendant that he had a right to

proceed pro se, but strongly advised defendant not to represent himself, reciting the reasons set forth

at the previous hearings.  See Doc. #115.  The Court reviewed defendant's lack of formal training in

the law, and began to ask defendant whether he knew the hazards of self-representation.  At that

point, defendant stated that he wanted Mr. Lowry to stay in the case until the Court appointed new

counsel.  Defendant agreed to appointment of new counsel.

> D.      Jacquelyn E. Rokusek, Esq.

On August 31, 2005, the Court appointed Jacquelyn E. Rokusek to represent defendant.  See

Doc. #116.  On September 21, 2005, defendant entered a plea of guilty to Count I of the Superceding

Indictment.  On October 18, 2005, and again on November 1, 2005, defendant filed motions to

dismiss Ms. Rokusek as his counsel.  See Docs. ##121, 126.  On February 21, 2006, the Court

overruled those motions.  See Doc. #153.

On May 24, 2006, defendant filed a motion pro se "notifying the Court of [his] refusal to

participate" in this case and stating that he had filed a civil rights case against Ms. Rokusek, Assistant

United States Attorney Kim Martin and the undersigned judge.  See Doc. #163.  On June 15, 2006,

defendant filed a pro se brief asserting that the Court had refused to examine Ms. Rokusek's conflict

of interest.  See Doc. #164.  On June 27, 2006, plaintiff filed pro se a notice of interlocutory appeal.

Doc. #167.  On August 15, 2006, defendant filed the current motion to dismiss Ms. Rokusek as

counsel and withdraw his plea of guilty.  See Doc. #189.

Defendant's refusal to work with Court-appointed counsel, and vacillating demands to proceed pro se, have prevented the case from going forward in a timely manner. The current motion to proceed pro se is yet another attempt to delay the proceedings. Through rambling and incoherent pleadings, oral argument and perjured testimony under oath, defendant has demonstrated that he is not capable of effectively representing himself in this complex criminal case. Defendant's successive demands with respect to counsel and to proceed pro se are abusive and manipulative, and the Court denies defendant's request to proceed pro se.

### 2.    Alleged conflict of interest which prevents current counsel from proceeding.

The Sixth Amendment right to assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest. See, e.g., Wood v. Georgia, 450 U.S. 261, 271-73 (1981). This right is violated if the attorney has a potential conflict of interest that results in prejudice to defendant, or an actual conflict of interest that adversely affects the attorney's performance. United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994). Once the Court learns of the possibility of a conflict of interest, it is obligated to investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no conflict at all. Selsor v. Kaiser, 22 F.3d 1029, 1032-33 (10th Cir. 1994). If the Court determines that the conflict is so severe that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation, then the Court must disqualify the attorney. United States v. Hunt, 62 Fed. Appx. 272, at *3 (10th Cir. 2003). If the Court determines that the attorney suffers from a lesser actual conflict or only a potential conflict – such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation – the Court should determine whether defendant knowing and intelligently waives his right to a non-conflicted lawyer.

-6-

Id. (citing Brady v. United States, 397 U.S. 742, 748 (1970); Edens v. Hannigan, 87 F.3d 1109, 1118 (10th Cir. 1996)).  If the Court's inquiry finds no genuine conflict, nothing further is required.

The mere fact of defense counsel's prior employment with the office of the United States Attorney does not create an actual conflict of interest or an appearance of impropriety.  See ABA Committee on Professional Ethics, Formal Opinion 342, 62 A.B.A.J. 517 (1976).  Rule 1.11 of the Model Rules of Professional Conduct, however, prohibits lawyers from undertaking private litigation if they formerly worked as public officers or employees in a case in which they were "personally and substantially" involved.[1]  Defendant has not asserted that Ms. Rokusek was "personally and substantially" involved in his case while she worked in the United States Attorney's office.  At the hearing set for November 20, 2006, the Court will confirm that Ms. Rokusek was not "personally and substantially" involved in defendant's case while she worked in the United States Attorney's office.

   **3.     Alleged conflict of interest based on counsel's alleged personal friendship with the judge and Assistant United States Attorney Kim Martin.**

A district judge has "a continuing duty to ask [herself] what a reasonable person, knowing all the relevant facts, would think about [her] impartiality." United States v. Hines, 696 F.2d 722, 728 (10th Cir. 1982).  Recusal is required when "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987) (citations omitted); see also 28 U.S.C. § 455(a) ("Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably

---

[1]     Under D. Kan. Rule 83.6.1, federal courts in the District of Kansas follow the Kansas Rules of Professional Conduct as adopted by the Supreme Court of Kansas.  The Kansas Supreme Court has adopted the Model Rules of Professional Conduct as the "general standards of conduct and practice required of the legal profession in Kansas." Kan. S.Ct. Rule 226.  See Biocore Med. Techs., Inc. v. Khosrowshahi, 181 F.R.D. 660, 669-73 (D. Kan. 1998).

be questioned."). Section 455 covers both "interest or relationship" grounds and "bias or prejudice" grounds. Liteky v. United States, 510 U.S. 540, 548 (1994).

In this case, recusal is not appropriate. A reasonable person, knowing all relevant facts, would not question the impartiality of the undersigned judge. The party seeking recusal must provide a reasonable factual basis to doubt the judge's impartiality. Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). Defendant attempts to do so by the conclusory allegation that Ms. Rokusek is a personal friend of the judge. The undersigned is not a personal friend of Ms. Rokusek, however, and defendant's conclusory allegation about the purported friendship is insufficient to warrant recusal. Cf. United States v Guthrie, 184 Fed. Appx. 804, 808 (10th Cir. 2006) (citing United States v. Lovaglia, 954 F.2d 811, 815-17 (2d Cir. 1992) (sentencing judge's prior friendship with victim of crime did not require recusal in defendant's sentencing proceeding)).

Likewise, defendant's conclusory allegation that Ms. Rokusek has a conflict because she is a personal friend of Assistant United States Attorney Martin is insufficient to establish a conflict of interest. Nonetheless, at the hearing on November 20, 2006, the Court will ascertain whether there is any basis for defendant's conclusory allegation.

**4.      Schedule of sentencing hearing on July 18, 2006.**

On May 11, 2006, at the request of the United States Probation Office, the Court continued defendant's sentencing hearing from June 1 to July 18, 2006. See Doc. #159. On June 15, 2006, defendant filed a motion seeking to recuse court-appointed counsel and proceed pro se. See Doc. #164. From that time forward, defendant was on notice of the need to prepare for the sentencing hearing on July 18, 2006. Defendant cannot complain that he had insufficient time to prepare to proceed pro se at the sentencing hearing on July 18, 2006.

**5.      Alleged conspiracy between defense counsel, the Court and the prosecutor.**

Aside from paranoid and delusional accusations, the record contains no evidence that court-appointed defense counsel (a) "structures her presentation [at sentencing] to facilitate a conspiracy between herself, the prosecutor, and the Court;" (b) "was asked by prosecutor Kim I. Martin to come into the case and do the bidding of the prosecution in this matter;" (c) "agreed and confederated in a plan aimed at 'putting the defendant away for life' because of their [her and Ms. Martin's] vindictively-charged animus toward the defendant as an abuser and user of women;" (d) with Ms. Martin, "enlisted in a 'little girls club' conspiracy using and abusing their official positions in a gender-based attack on the defendant;" (e) "engaged in the process of conspiracy to assist the prosecution in the destruction of crucial evidence and information of an exculpatory nature provided to her by the defendant;" or (f) "threw about and consented to the use of perjured testimony by government witnesses at the time of sentencing." Ms. Rokusek and Ms. Martin have appeared in this Court over the course of many years, and they enjoy excellent reputations for professional conduct and integrity.  If defendant has evidence which supports these seemingly preposterous allegations, he should present it under oath.  On this record, no further action to address defendant's claims is warranted.

**6.      Alleged breach of the plea agreement.**

Defendant has tendered no evidence that the government committed a material breach of the plea agreement.  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York, 404 U.S. 257, 262 (1971).  Only material breaches of a plea agreement provide a basis for a court to determine that a plea was involuntary.  Rodriguez v. New

Mexico, 12 F.3d 175, 175 (10th Cir. 1993). The materiality of a term is evaluated by an objective standard. Id. In examining a claim of breach, a court examines what was reasonably understood by defendant when he entered his plea of guilty. United States v. Arnett, 628 F.2d 1162, 1164 (9th Cir. 1979) (quoting United States v. Crusco, 536 F.2d 21, 27 (3d Cir. 1976)).

In return for defendant's plea of guilty, the government agreed to recommend a three-level reduction for acceptance of responsibility. The plea agreement also provided in part as follows:

> [T]he government's obligation concerning acceptance of responsibility is contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct that the Court determines to true, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in additional criminal conduct, the United States reserves the right to withdraw this recommendation without breaching this agreement.

Doc. #120 at 14. At the sentencing hearing, defendant gave conflicting statements as to his involvement, falsely denied and frivolously contested facts which the Court finds to be true. The government did not recommend that defendant receive a three-level reduction for acceptance of responsibility. Indeed, it recommended the statutory maximum sentence of thirty years. Under the plea agreement, the government had the right to withdraw its recommendation for a reduction for acceptance of responsibility. Therefore, further proceedings on this issue are not necessary.[2]

---

[2] At the sentencing hearing, the government asked the Court to impose the statutory maximum sentence, as follows:

MS. MARTIN:     [N]o matter what sentence you give this defendant, it won't be long enough. Short of an execution, Your Honor, this defendant will continue his criminal behavior. And, obviously, that's not a punishment that's provided for this particular crime. This defendant will leave this courtroom probably today and tomorrow and continue the same scams that he has been perpetrating on all
(continued...)

Contrary to defendant's representations, the Court at the Rule 11 hearing did not agree to the facts as contained in the plea agreement or agree to sentence defendant within the guideline range. In fact, the Court advised defendant that it was not required to sentence him within the guideline range. See Plea Transcript at 28. Moreover, the Court's statements in that regard did not breach the plea agreement. Nothing in the plea agreement guaranteed that defendant would be sentenced within the guideline range or bound the Court to any particular calculation of the guideline range.

**7.      Ex parte communications**.

The Court has had no ex parte communications about this case with court-appointed counsel or the prosecutor, and communication with the probation office is not ex parte communication. See United States v. Dingle, 546 F.2d 1378, 1380-81 (10th Cir. 1976) (probation service is arm of court when preparing presentence report ); see also United States v. Kaamasee, No. 90-2086, 1991 WL 49752, at *2 (10th Cir. Mar. 25, 1991) (refusing to assume that judge received and relied on improper information in imposing sentence) (citing United States v. Gonzales, 765 F.2d 1393, 1396 (9th Cir. 1985) (probation officer disclosed no facts during ex parte discussions that were not in presentence report)).

**8.      Notice of intent to depart.**

_____

[2](...continued)
the people that testified here.  So it will be the government's position, Your Honor, that the maximum sentence that can be imposed should be imposed upon this defendant.

THE COURT:              The maximum being what?  The statutory maximum?

MS. MARTIN:             Yes, Your Honor.

From the date of the original presentence investigation report through the date of the sentencing hearings on July 18 and July 20, 2006, the Court has appraised defendant of all sentencing calculations, adjustments, variations and departures which it is considering.  See United States v. Calzada-Maravillas, 443 F.3d 1301, 1304 (10th Cir. 2006) (court must give notice of intent to depart from guidelines to allow parties to prepare to make reasoned arguments).

**9.**     **Defendant's telephone privileges at Corrections Corporation of America**.

The Court is increasingly alarmed about the fact that defendant apparently continues to engage in fraudulent conduct while he awaits sentencing, and the extent to which Corrections Corporation of America aids and abets this fraud by allowing him liberal telephone privileges. Defendant is in custody, among other reasons, to protect the public.  This situation is absolutely unacceptable, and the Court expects a full explanation from the government at the time of sentencing on November 20, 2006.

**IT IS THEREFORE ORDERED** that defendant's Motion To Withdraw Jacquelyn E. Rokusek as Attorney (Doc. #197) filed October 6, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that defendant's Motion To Renew Motion To Dismiss Court Appointed Counsel And To Proceed In Pro Se; And Motion To Declare The Plea Agreement Invalid (Doc. #189) filed August 15, 2006 is **STRICKEN** in part as to the motion to declare the plea agreement invalid.  The motion is otherwise **OVERRULED**.

Dated this 2nd day of November, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-12-