IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 04-20089-01-KHV |
| MONTGOMERY AKERS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

On November 20, 2006, the Court sentenced defendant to 327 months in prison. On January 16, 2008, the Tenth Circuit Court of Appeals affirmed defendant's sentence. This matter is before the court on Defendant's Motion For Reduction Of Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #495) filed August 28, 2020, which seeks release based on the Coronavirus Disease-2019 ("COVID-19") pandemic. Pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant. For reasons stated below, the Court dismisses defendant's motion.

**Factual Background**

Defendant currently is confined at USP Marion, a Bureau of Prisons ("BOP") facility in Marion, Illinois. As of February 26, 2021, 777 inmates and 61 staff members had tested positive for COVID-19. See COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Feb. 26, 2021). Some 773 inmates and 55 staff members have recovered. See id. Two inmates have died from COVID-19. See id.

Defendant is 62 years old. Defendant states that because of asthma and atrial fibrillation,

he is at high risk of contracting COVID-19 and of severe illness or death if he contracts it. With good time credit, defendant's projected release date is December 21, 2027. Defendant asks the Court to grant compassionate release.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so. See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c). Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Defendant seeks compassionate release because of various health conditions and the COVID-19 pandemic. For reasons stated below, the Court lacks jurisdiction because (1) defendant has not exhausted administrative remedies and (2) he has not established extraordinary and compelling reasons for his release.

**I.     Exhaustion Of Administrative Remedies**

The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). As to the second

alternative, a "lapse" refers to the failure of the warden to respond to defendant's request. See United States v. Abdeljawad, No. 15-CR-3394 WJ, 2020 WL 4016051, at *2 (D.N.M. July 16, 2020) (in context, "lapse of 30 days" refers to complete absence of response during that period); see also United States v. Gunn, 980 F.3d 1178, 1179 (7th Cir. 2020) (prisoner must first allow BOP to review request and make recommendation or show that BOP let 30 days pass "in silence"); *lapse*, Black's Law Dictionary 885 (7th ed. 1999) (lapse is "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred").  In other words, if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court. See United States v. Otero, No. 1:11-CR-2672-WJ, 2021 WL 39682, at *2 (D.N.M. Jan. 5, 2021) (to exhaust remedies, prisoner must file administrative appeal of denial under 28 C.F.R. § 571.63); United States v. Valenzuela, No. 15-CR-01460-WJ, 2020 WL 5439803, at *2 (D.N.M. Sept. 10, 2020) (court lacks jurisdiction until inmate appeals warden denial through administrative appeal process and receives final agency determination).  But see United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020) (statute allows defendant to file motion 30 days after warden receives request); United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

The administrative exhaustion requirement in Section 3582(c)(1)(A) is jurisdictional. United States v. Read-Forbes, 454 F. Supp. 3d 1113, 1116–17 (D. Kan. 2020) (jurisdictional based on "text, context, and relevant historical treatment" of Section 3582(c)) (quoting Musacchio v. United States, 136 S. Ct. 709, 717 (2016)).  Defendant alleges that he has satisfied the exhaustion

prerequisite.  Defendant's Reply To The Government's Response To Defendant's Motion For Compassionate Release (Doc. #500) filed October 9, 2020 at 3.  The record reflects that defendant submitted a request on April 21, 2020, which the warden denied on May 4, 2020.  Id., Exhibit 1. Because defendant has not shown that he appealed the warden's denial of his request, he has not fully exhausted all administrative appeal rights.  Accordingly, the Court lacks jurisdiction to consider his motion for compassionate release.

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.  See Read-Forbes, 454 F. Supp. 3d at 1117.  In contrast with judicially created exhaustion requirements, the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.  Malouf v. SEC, 933 F.3d 1248, 1256 (10th Cir. 2019), cert. denied, 2020 WL 1124531 (U.S. Mar. 9, 2020); see Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (exhaustion statutes like Prison Litigation Reform Act of 1995 establish mandatory exhaustion regimes, foreclosing judicial discretion).  The COVID-19 pandemic is no exception.  See Alam, 960 F.3d at 831, 833–36 (enforcing mandatory exhaustion requirement despite seriousness of COVID-19 and its spread in prisons); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (despite COVID-19 pandemic, failure to exhaust presents "glaring roadblock" foreclosing compassionate release at this point).

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound policy reasons support the requirement that defendant must first present to the BOP an appeal of the denial of his request for a reduced sentence.  The exhaustion requirement helps prevent

premature claims and ensures that the agency that possesses the most expertise is given the first shot at resolving defendant's request. See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011); see also Raia, 954 F.3d at 597 ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."). Because defendant is in BOP custody, the BOP is in a better position to initially determine his medical needs, his specific risk of COVID-19, the risk to inmates generally at USP Marion, the risk to the public if he is released and whether his release plan is adequate. See United States v. Epstein, No. CR 14-287-FLW, 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); see also Alam, 960 F.3d at 835 (preventing prisoners seeking relief because of COVID-19 from charging straight to federal court helps prison administrators prioritize most urgent claims and ensure that they can investigate gravity of conditions supporting compassionate release and likelihood that conditions will persist). Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2).

## II.     Extraordinary And Compelling Reasons For Release

Even if defendant had exhausted administrative remedies, he has not shown "extraordinary and compelling reasons" for release. Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and

compelling reasons for [a] sentence reduction, including the criteria to be applied." United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories. U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018). In addition, the policy statement requires that before granting relief, the Court must find that defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)). In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release. See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)). Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request. See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

Here, defendant seeks compassionate release based on asthma, atrial fibrillation and the risk that he will contract COVID-19 at USP Marion. None of these factors are specifically

identified in the Section 1B1.13 commentary under Subsections (A) through (C).[1]  Accordingly, for defendant to establish extraordinary and compelling reasons for release, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(D).  To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense." Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).

---

[1]  The government concedes that a medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and compelling reason for release.  See Government's Response To Defendant's Motion For Compassionate Release (Doc. #499) at 15–16. The government argues that during the COVID-19 pandemic, medical conditions such as asthma and atrial fibrillation satisfy the criteria under subsection (A) of the Section 1B1.13 commentary, i.e. a chronic condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.  Id.  Here, subsection (A) does not apply because unless and until defendant contracts COVID-19, his asthma and atrial fibrillation does not limit his ability to provide self-care within the prison environment.  See U.S.S.G. § 1B1.13, cmt. n.1(A) (defendant must show chronic condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover").  Subsection (B) does not apply because defendant is 62 years old.  See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age).  Subsection (C) does not apply because defendant seeks relief based on his own circumstances, not family circumstances.  See U.S.S.G. § 1B1.13, cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP." U.S.S.G. § 1B1.13, cmt. n.1(D). In an unpublished decision, the Tenth Circuit implicitly recognized that the district court, rather than the BOP exclusively (as the commentary suggests), can determine under the catchall provision, whether "other" extraordinary and compelling reasons exist. See Saldana, 807 F. App'x at 819–20. The Court likewise concludes that on a defense motion, it may—independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary. U.S.S.G. § 1B1.13, cmt. n.1(D); see United States v. McIntosh, No. 11-20085-01-KHV, 2020 WL 5747921, at *5 (D. Kan. Sept. 25, 2020), reconsideration denied, 2020 WL 6270918 (D. Kan. Oct. 26, 2020); see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples"); cf. United States v. Rodriguez, No. 20-3220, 2021 WL 717045, at *2 (10th Cir. Feb. 24, 2021) (Briscoe, J., concurring) (Section 1B1.13 does not apply to defense motions); Gunn, 980 F.3d at 1180–81 (because no policy statement applies to inmate motions, district judges must consider only statutory criteria of "extraordinary and compelling reasons"); United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020) (because Section 1B1.13 does not apply to inmate motions, Application Note 1(D) cannot constrain district court discretion to consider whether reasons are extraordinary and compelling).

In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."  United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting *extraordinary*, Webster's Third International Dictionary, Unabridged (2020)).  "Compelling" means "tending to convince . . . by forcefulness of evidence."  Id. (quoting *compelling*, Webster's Third International Dictionary, Unabridged (2020)).  As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence.  See Saldana, 807 F. App'x at 819.

Here, defendant seeks release because of asthma and atrial fibrillation, and the risk of severe illness or death if he contracts COVID-19.  Defendant has not shown that compared to his proposed placement in the community, he faces a heightened or imminent risk of exposure to COVID-19 at USP Marion.  See United States v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).  Defendant's medical conditions and the conditions at USP Marion, individually and collectively, do not constitute extraordinary and compelling reasons for his release.  Likewise, defendant has not established that the nonexclusive factors in BOP Program Statement 5050.50 compel his release.  COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.  Even so, the risk that COVID-19 may spread further at USP Marion cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

### III.     Conclusion

Defendant has not exhausted administrative remedies.  In addition, defendant's medical conditions and the conditions at USP Marion are not "extraordinary and compelling" reasons that warrant his release.  Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction.[2]  See United States v. Poutre, 834 F. App'x 473, 474 (10th Cir. 2021) (unless basis for resentencing satisfies specific category in Section 3582(c), district court lacks jurisdiction to consider request); Saldana, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that Defendant's Motion For Reduction Of Sentence Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #495) filed August 28, 2020 is **DISMISSED for lack of jurisdiction**.

**IT IS FURTHER ORDERED** that defendant's letter (Doc. #505) filed February 1, 2021, which the Court construes as a motion for clarification on the status of his case, is **OVERRULED as moot**.

Dated this 3rd day of March, 2021 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[2]     Even if defendant had exhausted administrative remedies and established "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553.  For substantially the reasons that the Court has stated in the voluminous record of this case, a sentence of time served (a reduction of more than six years) is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.  The Court recognizes that defendant has completed a substantial portion of his original sentence and may have made some progress toward rehabilitation.  Even so, on balance, the factors under Section 3553(a) do not support a reduced sentence.